Joshua B. Swigart (SBN 225557)
Josh@SwigartLawGroup.com
Juliana G. Blaha (SBN 331066)
Juliana@SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 866-219-3343
F: 866-219-8344

Daniel G. Shay (SBN 250548)
DanielShay@TCPAFDCPA.com
**LAW OFFICE OF DANIEL G. SHAY**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 619-222-7429
F: 866-431-3292

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY TALIA,<br><br>        Plaintiff,<br><br>vs.<br><br><br>BANK OF AMERICA, N.A.,<br><br>        Defendant. | Case No: **'21CV0676 JLS NLS**<br><br>COMPLAINT FOR VIOLATIONS OF:<br><br>1. Electronic Funds Transfer Act<br>2. California Consumer Privacy Act<br>3. California Unfair Competition Law<br>4. Negligence<br>5. Breach of Implied Duty to Perform with Reasonable Care<br>6. Design Defect<br>7. Negligent Failure to Warn<br>8. Breach of Contract<br>9. Breach of Implied Contract<br>10. Breach of the Implied Covenant of Good Faith and Fair Dealing<br>11. Breach of Contract, Third-Party Beneficiary |

Complaint

## **INTRODUCTION**

1.  Plaintiff Danny Talia ("Plaintiff") alleges the following facts and claims against Bank of America, N.A. ("Bank of America" or "Defendant"), regarding its management of Plaintiff's unemployment benefits. The allegations pertaining to Plaintiff arise from Plaintiff's personal knowledge and investigation. Bank of America has sole control over numerous relevant documents and evidence that will corroborate allegations by Plaintiff after the discovery phase of this litigation.

2.  In 2010, California's Employment Development Department ("EDD") executed an exclusive contract with Bank of America to manage, administer and distribute billions of dollars in unemployment insurance and other benefits to unemployed Californians. The contract has been renewed and modified several times since 2010 and is still in effect.

3.  In 2020, The Coronavirus hit California particularly hard with over 3.5 million confirmed cases[1] as of March 13, 2021. This confirmed total is over 1 million higher than Texas, the second highest state in America affected by COVID-19 with approximately 2.3 million confirmed cases[2] as of March 14, 2021. Because of this unprecedented pandemic, California's unemployment rate rose 15 percent in April 2020[3]. Those in dire need of unemployment benefits, many like Plaintiff that struggled desperately to find work, were then confronted with another seemingly insurmountable obstacle manufactured by Bank of America which made it nearly impossible for those in need of benefits to receive their much-needed aid. Bank of America's decision to not include the heightened security measures on the EDD debit cards, which other Bank of America debit cards have employed as standard,

---

[1] COVID CA: www.Covid19.ca.gov/state-dashboard/
[2] Texas Health and Human Services:
www.txdshs.maps.arcgis.com/apps/opsdashboard/index.html#/ed483ecd702b4298ab01e8b9cafc8b83
[3] Employment Development Department State of California: https://www.edd.ca.gov/newsroom/unemployment-may-2020.htm

Complaint

allowed criminals to funnel, illegally, billions of dollars[4] out of unemployed Californians like Plaintiff. Thousands of Californians were faced with pennies left in their Bank of America EDD prepaid debit card accounts after numerous fraudulent charges were made all over America and the world by thieves who penetrated Bank of America's systems, or their accounts were frozen by Bank of America for seemingly no reason.

4.   Many Californians woke up to find hundreds or thousands of dollars missing from their accounts or frozen:

> "Everything was fine, and then on August 22, I checked the balance on my card, and it said a cash withdrawal in the amount of $1,000.00 had been made."
>
> – EDD cardholder victim[5]

5.   Bank of America froze accounts without notice, preventing victims from accessing desperately needed aid for months. Bank of America's Terms and Conditions in the California Employment Development Department Debit Card Account Agreement state that EDD card holders will receive funds on the day EDD has funded the recipients account[6], and only through notice may Bank of America take such actions as "freezing" an account.[7] However, this was not the case for many EDD card holders including Plaintiff. No notice was given prior to Bank of America freezing Plaintiff's account.

6.   Additionally, Bank of America touts its "Zero Liability" policy for unauthorized transactions as a protection for EDD card holders.

> "Under the Bank of America "zero liability" policy, you may incur no liability for unauthorized use of your Card up to the amount of the

---

[4] Cal Matters: https://calmatters.org/economy/2021/01/bank-of-america-lost-hundreds-of-millions-on-california-unemployment-fiasco/
[5] ABC News: https://abc7.com/bank-of-america-edd-empty-accounts-fraud-cases-california-unemployment/8424745/
[6] Bank of America, Terms and Conditions; California Employment Development Department Debit Card Account Agreement; section 2.
[7] Id.

Complaint

unauthorized transaction, provided you notify us within a reasonable time of the loss . . ."

– Bank of America's Terms and Conditions[8]

7.   The EDD card holder's reality of attempting to recoup their fraudulently lost funds back into their accounts was an entirely different situation including for Plaintiff. Under Bank of America's own policy with EDD card holders Bank of America agreed that no more than ten (10) days would pass in determining if an error occurred with an EDD account. Moreover, Bank of America would promptly correct any such error.[9]  In the event that more time is needed to investigate a grave error, Bank of America may take up to 45 days to investigate complaints or questions.[10] In this occasion Bank of America acknowledges that EDD card holders will need access to their necessary EDD benefits, and Bank of America would credit accounts so EDD card holders would have access to their funds.[11]  In theory Bank of America's terms and conditions would provide EDD card holders with a means to survive during events like the rampant fraud that occurred to countless EDD card holders.  However, Bank of America did not follow that procedure. Many EDD card holders were left homeless, jobless, and penniless because Bank of America chose to not adhere to its own "Zero Liability" to the consumer policy. Instead, Bank of America created its own "Zero Liability" to Bank of America policy.

8.   Compounding an almost futile situation, EDD card holders such as Plaintiff were left without recourse or a timeline as to when the situation would be rectified.  EDD cardholders were put on hold for countless hours and made to jump through exhausting hoops in efforts to reacquire lost benefits. EDD card holders are

---

[8] Id. at section 9.
[9] Bank of America, Terms and Conditions; California Employment Development Department Debit Card Account Agreement; section 11.
[10] Id.
[11] Id.

Complaint

desperately relying on their unemployment benefits, the hundreds of dollars a week allows EDD card holders to survive. Albeit EDD card holders' individual benefits are insignificant in comparison to Bank of America's merchant fee profits in their exclusive contract with EDD[12], the money the EDD card holders are entitled to weekly is all the money they have to survive.

> "It's not a big amount of money but it's money that we all need right now. I shouldn't have to be going through all these hoops to deal with that one, it's their responsibility that my account is safe."
>
> – EDD cardholder victim[13]

9. Preventable is a common word many EDD card holders such as Plaintiff are coming across when researching this horrendous situation. When EDD card holders learn that hundreds of thousands of other EDD benefit accounts were frequently accessed, all eyes shift to Bank of America's choice to not employ EMV[14] chips on EDD cards it issued so that the cards would be EMV compliant.[15] Bank of America's conscious choice to issue hundreds of thousands of EDD benefit recipients' cards that were not EMV compliant directly negatively impacted thousands of Californians including Plaintiff. Bank of America's choice to issue EDD cards with antiquated technology detrimentally affected thousands of EDD card holders that desperately needed aid.

> "EDD cards make stealing your information especially easy, because unlike regular debit cards, they [EDD cards] don't have a chip . . . By having a chip [EMV], you have your information that's on the card encrypted in the chip and it makes it more difficult to duplicate the cards . . . Whereas the magnetic strip, that's 30- to 40-year-old technology."

---

[12] Cal Matters: https://calmatters.org/california-divide/2021/02/how-edd-and-bank-of-america-make-millions-on-california-unemployment/
[13] CBS News: https://sanfrancisco.cbslocal.com/2020/12/22/victims-of-bank-of-america-edd-debit-card-fraud-tell-stories-of-closed-claims-frustration-loss/
[14] EMV stands for Europay, Mastercard, and Visa.
[15] "EMV compliance" is a global payment technology standard established by cardmember associations like Mastercard and Visa designed to protect customers from fraud.

Complaint

– Steve Morang certified fraud examiner [16]

10. Many EDD card holders are demanding answers from Bank of America. Why was this antiquated technology used on them, but not regular Bank of America debit card holders?

11. Bank of America's failure to protect EDD card holders' private information from fraud and failure to resolve EDD card holder disputes in accordance with applicable rules, regulations, and agreements in a timely manner with adequate clear and consistent communication has violated numerous laws. Bank of America has breached its contractual obligations with Plaintiff, other EDD card holders and the State of California. These actions by Bank of America caused direct harm to Californian citizens who were entitled to received EDD benefits. The benefits were meant to bridge the gap from homelessness and starvation to shelter and food on the table for their families during the global pandemic.

## **JURISDICTION AND VENUE**

12. Jurisdiction of this Court arises pursuant to: (i) 28 U.S.C. § 1331 with respect to causes of action arising out of the Federal Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq, additionally 28 U.S.C. § 1367 with respect to causes of action arising out of state law; and (ii) U.S.C. §1332(a) because Plaintiff is a citizen of California, Defendant, Bank of America, is incorporated under the state laws of Delaware, and has its principal place of business in North Carolina, and the amount in controversy exceeds $75,000.

13. Because Defendant, Bank of America, has purposely availed itself in California and afforded itself to the protection and benefits of the State of California law, has sufficient minimum contacts with the State of California, and has a substantial

---

[16] Steve Morang: certified fraud examiner with San Francisco-based accounting firm, *Frank, Rimerman and Company.* Citing: CBS SF Bay Area: https://sanfrancisco.cbslocal.com/2020/10/29/fraudulent-charges-appearing-on-bank-of-america-edd-debit-cards-350000-unemployed-californians/

Complaint

portion of its business with the State of California, this Court has personal jurisdiction over Bank of America.

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and (iii) Defendant conducted business within this judicial district at all times relevant.

## **PARTIES**

15. Plaintiff is a person residing in San Diego County, California. Plaintiff became out of work because of the COVID-19 pandemic. Plaintiff applied for and received EDD unemployment benefits. Soon thereafter, Plaintiff received a Bank of America EDD debit card with a magnetic stripe (no EMV chip) to access Plaintiff's benefits.

16. Bank of America is a national bank with its principal place of business in North Carolina. As one of America's largest banking institutions, Bank of America was awarded the State of California's EDD benefit distribution contract and is the sole distributor of the State of California's EDD benefits. Bank of America does a significant amount of business in California with 460 branches in the state.[17]

## **GENERAL FACTUAL ALLEGATIONS**

### **Bank of America's Exclusive Contract with EDD &**
### **Implementation of Antiquated Technology in EDD Debit Cards**

17. In 2010, Bank of America and EDD entered an exclusive contract to have Bank of America distribute all of California's EDD's unemployment benefits to recipients through debit cards.[18] The contract has been renewed several times and is still in force.

---

[17] Go Banking Rate: *Bank of America Near Me:* https://www.gobankingrates.com/banking/banks/bank-america-bank-near/
[18] North Coast Journal of Politics, People & Art: How EDD, Bank of America Make Millions on California Unemployment: https://www.northcoastjournal.com/NewsBlog/archives/2021/02/06/how-edd-bank-of-america-make-millions-on-california-unemployment

Complaint

18. The State of California stated that EDD benefit card holders will receive fraud protection from Bank of America's "Zero Liability" policy.[19]

19. Bank of America stated that EMV chip is the credit and debit card security standard in many countries around the world.[20]  Bank of America said that when purchases are made using the chip feature at chip-enabled terminals, the transaction is more secure, and this makes the card more difficult to counterfeit or copy.[21] Bank of America believes EMV chip technology is the next step in providing enhanced security to card holders.[22]

20. Yet, Bank of America intentionally issued thousands of California EDD benefit card holders debit cards without EMV chip technology including to Plaintiff.  Bank of America states that all Bank of America card holders, regardless of EMV chips or just magnetic stripes, should have confidence in the protections and security features Bank of America provides for all credit and debit card accounts.[23]

21. Even though Bank of America has control over the funds in EDD accounts once EDD deposits funds,[24] thousands of EDD accounts fell victim to fraudulent transactions because of Bank of America's use of antiquated technology i.e., the magnetic strip.  Bank of America markets itself as an industry leader in security and anti-theft.  Yet it failed to protect hundreds of thousands of EDD card holders who desperately needed their aid to stay afloat.

**Bank of America's Permeable Security Protocols Failed to Protect EDD Accounts Holders Personal and Private Information**

22. Bank of America failed to properly secure EDD account holders' information and these actions directly caused EDD account holders' private and personal

---

[19] Id.
[20] Bank of America, Chip Card FAQs: https://www.bankofamerica.com/security-center/faq/emv-chip-card/
[21] Bank of America, Chip Card FAQs: https://www.bankofamerica.com/security-center/faq/emv-chip-card/
[22] Id.
[23] Id.
[24] Bank of America, Terms and Conditions; California Employment Development Department Debit Card Account Agreement; section 2.

Complaint

information to be accessed by non-authorized third parties. These breaches could only have occurred through negligent management of EDD account holder's information.

23. Thousands of EDD card holders account information were fraudulently accessed because of Bank of America's inadequate security measures. Many of these fraudulent activities took place prior to EDD card holders physically obtaining their EDD debit cards from Bank of America. This information could have only been accessed if Bank of America did not properly install the proper safeguards to prevent such fraudulent activity.

24. Bank of America claims it has multiple layers of security protection in place to protect customers and its policies, procedures and protections are always evolving to stay ahead of new strategies used by fraudsters.[25] However, its technology was not cutting edge for hundreds of thousands of EDD account holders.

**Bank of America's Lack of Customer Service**

**Leaves Customers Completely Liable**

25. Bank of America stated that EDD account holders would have "Zero Liability" for unauthorized transactions made on EDD accounts.[26] It says an EDD account holder will incur no liability for unauthorized use of an EDD Card provided that the card holder notifies Bank of America within a reasonable time of the unauthorized use.[27]

26. Under Bank of America's own policy for EDD accounts, it agreed that no more than ten (10) days would pass in determining if an error occurred with an EDD account and to promptly correct any such error.[28] In the event that more time is

---

[25] Bank of America, Fraud Prevention FAQs: https://www.bankofamerica.com/security-center/faq/data-compromise/
[26] Bank of America, Terms and Conditions; California Employment Development Department Debit Card Account Agreement; section 9
[27] Id.
[28] Bank of America, Terms and Conditions; California Employment Development Department Debit Card Account Agreement; section 11.

9

needed to investigate an error, Bank of America may take a maximum of up to 45 days to investigate.[29]

27. Bank of America says that EDD card holders should contact Bank of America at once if card holders believe their card has been lost or stolen.[30]  It says that if a card holder identifies fraudulent transactions, that person should call Bank of America within 60 days to recover the money.[31]

28. But contacting Bank of America is practically impossible for Plaintiff and other EDD cardholders.  The 1.866.692.9374 telephone number given to EDD card holders has extremely long wait times, and frequently hangs up on EDD card holders.  If EDD card holders can reach a Bank of America representative, they are given incomplete or false information and no definitive answer as to when their funds would be returned, which is what happened to Plaintiff.

29. Bank of America promised that EDD card holders would have access to their disputed funds within 10 days from a dispute.  In reality, EDD card holders like Plaintiff went months without their money being returned.

30. Bank of America's decision to provide EDD cardholders with debit cards without EVM chips was a costly one for EDD benefit recipients like Plaintiff.  Billions of dollars have been stolen from California's EDD card holders and hundreds of thousands of accounts, including Plaintiff's, have been frozen because of Bank of America's decisions. As of January 27, 2021, there were 450,000 unemployment debit cards that remained frozen.[32] In the worst unemployment crisis in California's history, during an unprecedented pandemic, Bank of America left Plaintiff and hundreds of thousands of benefit recipients stranded.

---

[29] Id.
[30] Bank of America, Terms and Conditions; California Employment Development Department Debit Card Account Agreement; section 10.
[31] Id.
[32] LAist: Bank of America says it lost hundreds of millions on California's unemployment fiasco: https://laist.com/2021/01/27/bank_of_america_says_it_lost_hundreds_of_millions_on_californias_unemployment_fiasco.php

## **FACTS SPECIFIC TO PLAINTIFF**

### **Bank of America's Breach of Duty to Plaintiff**

31. Around mid-2020, Plaintiff sought EDD benefits when Plaintiff needed funds to bridge the gap between employment and pay living expenses during the pandemic.

32. Initially, Plaintiff's unemployment claim was denied. But Plaintiff won an appeal and received a lump sum payment of back-unemployment from EDD. The funds were deposited by EDD into a Bank of America account for Plaintiff and Bank of America issued Plaintiff a debit card to access the funds. Notably, the debit card did not have an EVM chip.

33. Around August of 2020, Plaintiff had roughly $11,000 of unemployment benefits in the Bank of America EDD account.

34. Plaintiff was taking care to protect and safeguard the valuable funds. Plaintiff did not perform any strange or suspicious transactions such as going to multiple ATM machines on the same day or purchasing goods overseas.

35. Yet in September of 2020, Bank of America unilaterally froze roughly $11,000 in Plaintiff's EDD account without any notice or reason sent to Plaintiff. Plaintiff was devastated.

36. Plaintiff began to persistently call Bank of America day after day and spent many hours on the phone attempting to have the funds returned.

37. Bank of America refused to issue any sort of refund or credit for the frozen funds so that Plaintiff could buy food, gasoline etc.

38. At one point, Bank of America told Plaintiff it was EDD's fault the funds were frozen and to call EDD. But calling EDD was no easy task either. When Plaintiff was finally able to connect, EDD informed Plaintiff it was entirely Bank of America's decision and fault.

39. Plaintiff began calling Bank of America again. On one of the calls an agent told Plaintiff the funds would be returned in two days and Plaintiff was ecstatic.

///

11

40. Since Bank of America had frozen Plaintiff's funds, Plaintiff had borrowed money from friends and family and was late on rent. Plaintiff was exuberant believing that the funds would be unfrozen in two days and began informing his friends, family etc that he would pay them back in two days.

41. But Bank of America did not keep its word. The funds were not released after the two days passed. Plaintiff was extremely sad, embarrassed, and depressed when he had to tell his friends and family that he needed more time to pay them.

42. Plaintiff began calling Bank of America again. Eventually an agent told Plaintiff the funds would be released in a week. Plaintiff hesitantly told his friends and family he would pay them back in a week.

43. A week passed and Bank of America did not return the funds. Plaintiff was even more sad, embarrassed, and depressed when he had to tell his friends and family that he would not be paying them on the day he promised.

44. This pattern happened several times. Bank of America promised to return the funds, Plaintiff told his friends and family he would pay them soon, then it never happened.

45. Plaintiff lost all credibility with the people that lent him money. They simply did not believe him when he assured them that he would pay them back. This caused even more depression.

46. The emotional roller coaster of thinking the money would be returned, then having it fall through, then happening again and again, coupled with losing all credibility with his friends and family was extremely draining on Plaintiff.

47. Around late 2020, Plaintiff contracted Covid-19 and became very ill. He was tired and felt horrible. All he wanted was for Bank of America to return his money, but it refused.

48. Plaintiff was forced to take out high interest short term loans until even that option was no longer available.

///

Complaint

49. At this point things really began to go downhill for Plaintiff.  He had exhausted all his resources.  He had no money, and no one would lend him any money.  Plaintiff became late on his car payment and other bills like his cell phone bill etc.

50. Worst of all, Plaintiff could not pay rent and his worst fear came true – Plaintiff became homeless.

51. Plaintiff estimates he called Bank of America over one hundred (100) times since September of 2020.  He spent hours on hold day after day speaking with unhelpful agents and estimates over one hundred (100) hours spent on the phone.

52. As of April 13, 2021, Bank of America still has not returned the $11,000 it unlawfully confiscated from Plaintiff.

53. Plaintiff followed the instructions on Bank of America's account agreement and made consistent, diligent efforts to recover the funds by making multiple telephone calls. Despite this, Bank of America's customer service department offered no meaningful response or assistance and has stymied Plaintiff's efforts at every turn.

54. At no point did Plaintiff receive communication via mail, email, call, text, or otherwise from Bank of America regarding the ongoing widespread fraud affecting EDD debit cards or how defrauded EDD recipients should proceed, even after Bank of America had frozen hundreds of thousands of EDD accounts in a desperate and heavy-handed effort to stem the effects of the fraud. The only option presented to individuals like Plaintiff has been to follow Bank of America's instructions to call the number on the debit card in reliance on its representations of a "Zero Liability" policy and "24/7" customer service. Unfortunately, as Plaintiff has learned, Bank of America's representations are false. Proceeding in accordance with Bank of America's policies and recommendations offers scant hope of recovering frozen funds timely.

55. Per Bank of America's "Zero Liability" policy Plaintiff should have been able to access Plaintiff's funds after ten (10) days, even if there was an investigation that Bank of America deemed necessary. But that was not the reality for Plaintiff, who

13

was left without recourse or other options. Plaintiff was held hostage by Bank of America with the only option of calling over and over.

56. Plaintiff is a victim of Bank of America's weak security measures implemented to save money. Plaintiff followed all of Bank of America's designated procedures while attempting to recover the funds, which still have not been returned.

## CAUSES OF ACTION CLAIMED BY PLAINTIFF

### COUNT I

### VIOLATIONS OF THE ELECTRONIC FUNDS TRANSFER ACT

### 15 U. S. C. § 1693, ET SEQ.; 12 C.F.R. § 1005.1 ET SEQ.

67. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

68. The foregoing acts and omissions Bank of America constituted numerous and multiple violations of the Electronic Funds Transfer Act.

69. Plaintiff brings this cause of action under the United States Electronic Funds Transfer Act ("EFTA") and 12 C.F.R. §§ 1005.1-1005.20, Regulation E of the EFTA.

70. Plaintiff's protected rights under Regulation E, 12 C.F.R. § 1005.11 were violated by Bank of America, because Bank of America failed to provide a provisional credit to Plaintiff's account when investigations pertaining to Plaintiff's account could not be resolved within ten (10) business days.

71. Under 15 U.S.C. § 1693f(e)(1)(A) Bank of America violated Regulation E by failing to provisionally credit Plaintiff's account within ten (10) days and did not make a good faith investigation. Specifically, Bank of America failed to provide Plaintiff adequate information about account status, complete or resolute customer service from which Plaintiff could resolve the error or a timeline as to when Plaintiff's account would be unfrozen. Due to the aforementioned reasons EFTA entitles Plaintiff to treble damages under 15 U.S.C. § 1693f(e).

///

Complaint

72. Under 15 U.S.C. § 1693f(e)(1)(B) Bank of America violated Regulation E by failing to provisionally credit Plaintiff's account within ten (10) days and did not have a reasonable basis for believing that the Plaintiff's account exposed to fraud. Specifically, Bank of America had Plaintiff call and investigate the account status with Bank of America over the phone. Plaintiff was given zero explanation as to who made the rampant fraudulent transactions that resulted in Plaintiff's frozen account. Nor did Bank of America's multiple layers of security protection, and procedures that were in place to protect clients, and customers facilitate accurate and/or complete investigations that would give Bank of America any indication as to who was defrauding Bank of America. Because Bank of America did not have any indication as to who was behind the widespread fraudulent transactions, it also did not have a reasonable basis for believing it was the individual EDD account holder aka Plaintiff. Even if Bank of America did claim it had some evidence of fraud by Plaintiff, it did not articulate that to Plaintiff, which demonstrates Bank of America's lack of evidentiary support to substantiate a reasonable belief that Plaintiff's account had been compromised. Due to the aforementioned reasons EFTA entitles Plaintiff to treble damages under 15 U.S.C. § 1693f(e).

73. Under 15 U.S.C. § 1693f(e)(2)(A) Bank of America knowingly and willfully concluded that Plaintiff's account should be frozen with no reason given.  As articulated above, Bank of America did not furnish any documents or other evidentiary support that would concretely conclude that Plaintiff's account was exposed.  Bank of America withheld funds and froze Plaintiff's account without furnishing any reason why it was frozen, or when the investigation would be over. Because there was no evidence to support such a conclusion by Bank of America, it knowingly, and willfully concluded Plaintiff's account exposed when such a conclusion could not have reasonably been made. Due to the aforementioned reasons, EFTA entitles Plaintiff to treble damages under 15 U.S.C. § 1693f(e).

///

Complaint

74. Under 12 C.F.R. § 1005.6(b)(2), Plaintiff's liability for any fraud on Plaintiffs EDD account would be capped at $500.00 total. Since Bank of America froze Plaintiff's account and withheld thousands of dollars from plaintiff, it has violated 12 C.F.R. § 1005.6(b)(2) by not limiting liability to $500.00.

75. Bank of America's violations of Regulation E caused Plaintiff extreme emotional distress and loss of money.

76. As a result of each and every violation of the EFTA by Bank of America, Plaintiff is entitled to actual damages; treble damages pursuant to 15 U.S.C. § 1693f(e); restitution relief of all EDD funds deposited into Plaintiff's account that were either withheld, frozen withdrawn or fraudulently taken by Bank of America or through Bank of America's actions; statutory damages; consequential damages; incidental damages; and injunctive relief prohibiting Bank of America from freezing Plaintiff's EDD funds.

## COUNT II

### VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT
### CAL. CIV. CODE § 1798.100 ET SEQ.

77. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

78. The foregoing acts and omissions Bank of America constituted numerous and multiple violations of the California Consumer Privacy Act ("CCPA").

79. In 2018, California legislature enacted the CCPA, Civ. Code § 1798.100,[33] which went into effect January 1, 2020, in response to a growing number of concerns regarding the protection of consumers' personal information from collection, use, or sale by businesses with consumer's notice.

80. Plaintiff is a "consumer" under Cal. Civ. Code § 1798.140(g).

81. Defendant is a "business" under Cal. Civ. Code § 1798.140(c)(1)(A).

---

[33] California Consumer Privacy Act of 2018, c. 545 (A.B. 375) Stats. 2018., codified at Civ. Code § 1798.100 (CCPA). The CCPA added Title 1.81.5 to Part 4 of the Division 3 of the Civil Code, relating to privacy.

Complaint

82. "Personal information" is defined under Cal. Civ. Code § 1798.81.5(d)(1)(A), as an individual's first name or first initial and the individual's last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted or redacted: social security number; driver's license number; California identification card number; tax identification number; passport number; military number; or other unique identification number issued on a government document commonly used to verify the identity of a specific individual; Medical information; health insurance information; or unique biometric data generated from measurement or technical analysis of human body characteristics, such as fingerprint, retina or iris image, used to authenticate a specific individual.

83. Bank of America collected, stored and/or transmitted Plaintiff's "personal information" in an unsecure manner that caused Plaintiff's "personal information" to be exposed or accessed by other individuals who did not have explicit permission from Plaintiff access referenced "personal information."

84. Cal. Civ. Code § 1798.81.5(b) requires Bank of America who owns, licenses, or maintains personal information about Plaintiff to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure.

85. Bank of America violated Plaintiff's rights under Cal. Civ. Code § 1798.81.5(b), because Bank of America elected to use antiquated technology, namely cheaper magnetic stripe technology on EDD cards rather than cards with EMV chip technology implemented on them.

86. Bank of America violations under the CCPA, Civ. Code § 1798.100 caused Plaintiff's account to be exposed and frozen by Bank of America which caused economic and non-economic harm to Plaintiff.

///

///

Complaint

87. As a result of each and every violation of the CCPA by Bank of America, Plaintiff is entitled to actual damages; statutory damages; consequential damages; incidental damages; and injunctive relief under Cal. Civ. Code § 1798.150(a).

## COUNT III

### BANK OF AMERICA'S VIOLATIONS OF
### CALIFORNIA'S UNFAIR COMPETITION LAW

88. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

89. The foregoing acts and omissions Bank of America constituted numerous and multiple violations of the California's Unfair Competition Law ("UCL") Cal. Bus. & Prof Code § 17200 *et seq.*

90. UCL defines violations as conduct that is: unlawful; unfair or fraudulent business act or practice and unfair; deceptive; or untrue or misleading advertising.

91. Bank of America committed fraudulent acts against Plaintiff when they promised, contractually, that Plaintiff would have access to the EDD account provisionally after ten (10) days of a dispute. Bank of America additionally fraudulently represented that Plaintiff would have "Zero Liability" for any unauthorized transactions connected to her account. Moreover, Bank of America acted fraudulently because it induced Plaintiff to believe that Plaintiff would have access to the money on numerous occasions, only to have the account frozen without notice.

92. Bank of America's actions are unlawful because they have violated both the EFTA and CCPA. Bank of America has unlawfully withheld Plaintiff's money in the EDD account and issued an unsecure EDD debit card containing personal information.

93. Bank of America's actions are unfair because Plaintiff initially had no other options to receive EDD benefits outside of Bank of America's EDD Debit Card. Plaintiff was forced to jump through endless hoops presented by Bank of America by

Complaint

countless representatives on their 24/7 assistance line. These representatives could not inform Plaintiff when the funds would be available.

94. As a result of each and every violation of the UCL by Bank of America, Plaintiff is entitled to injunctive relief forcing Bank of America to stop all unlawful, fraudulent, and unfair practices.

### COUNT IV

### NEGLIGENCE

95. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

96. The foregoing acts and omissions by Bank of America constitute numerous instances of negligence. A valid negligence claim must include: "(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury." (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917 [50 Cal.Rptr.2d 309, 911 P.2d 496]).

97. Plaintiff was owed a duty of reasonable care by Bank of America to ensure that (1) the EDD benefits were delivered in a secure manner (2) the EDD debit card was similar to other Bank of America non-EDD debit cards and equipped with EVM chop technology (3) Plaintiff was provided timely notice of all freezes, holds, locks, and/or other changes to the account (4) Bank of America would adhere to the Terms and Conditions in its contract with Plaintiff (5) Bank of America would adhere to Regulation E (6) Bank of America would safeguard Plaintiff's confidential information and (7) Bank of America would provide Plaintiff adequate, reliable, and informed communication via its 24/7 telephone customer service line.

98. Bank of America breached its duty of reasonable care by (1) repeatedly failing to deliver benefits to Plaintiff in a secure manner (2) allowing potentially fraudulent transactions to occur on the account through inadequate security measures (3) issuing Plaintiff an EDD debit card with inferior security features namely only magnetic stripe rather than an EVM chip (4) notifying Plaintiff about freezes, blocks

19

Complaint

and holds on the account (5) refusing to adhere to its Terms and Conditions contract with Plaintiff (6) not following Regulation E (7) allowing Plaintiff's personal information to be exposed (8) not providing 24/7 help as promised to Plaintiff.

99. Bank of America's decision to issue Plaintiff an EDD card without EMV chip technology was substandard care because Bank of America's standard care with its checking account customers is to issue debit cards with EVM technology.

100. Bank of America's actions resulted in violations of Regulation E and its own Terms and Conditions.

101. Bank of America's failure to ensure Plaintiff's personal information was secure was in direct contradiction to its Terms and Conditions and its stated Policies and Procedures.

102. Bank of America's actions caused foreseeable harm to Plaintiff because Bank of America is well established in the industry as a leader of EVM chip technology implementation which it has employed on other non-EDD debit cards to ensure they were secure. By not employing EVM technology on EDD cards, Bank of America foreseeably put EDD card holders like Plaintiff at risk.  Plaintiff and other EDD card holders are recipients of unemployment or other benefits to ensure they can bridge the gap and have basic needs met, i.e., shelter, food, and water. Moreover, it is foreseeable that without competent and reliable customer service assistance Plaintiff and other EDD card holders would be left with no other options and essentially be hijacked by Bank of America.  It is foreseeable without these benefits, which Bank of America withheld, froze, and made unavailable, that Plaintiff would be harmed.

103. Bank of America's negligent actions were the direct and proximate cause of Plaintiff's denial of access to EDD funds and exposure of personal information.

///

///

///

Complaint

## COUNT V

### BREACH OF IMPLIED DUTY TO PERFORM CONTRACT WITH REASONABLE CARE

104. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

105. The foregoing acts and omissions constitution numerous and multiple examples of Negligent Performance of Contract.

106. It is implied in every contract that performance will be done competently and with reasonable care. Even where Plaintiff is not a party to the contract, Plaintiff is entitled to damages for a breach of contract if the motivating purpose of the contract was for the Plaintiff to benefit from the contract.

107. Plaintiff is an intended beneficiary to the contract between Bank of America and the State of California. Plaintiff is under the good faith belief that the motivating purpose of the contracting parties was for the benefit of those similarly situated to Plaintiff by distributing EDD benefits to California residents in need of economic support.

108. Because Plaintiff is an intended beneficiary of the contract, Bank of America owed a duty to exercise reasonable care in performing its contract. Specifically, Bank of America was obligated to implement security measures to protect Plaintiff's information and EDD benefits, such as providing an EDD card with an EVM chip.

109. Bank of America was obligated to establish a customer service operation capable of handling the needs of its EDD cardholders as well as providing adequate assistance to EDD cardholders like Plaintiff. Bank of America was obligated to investigate and resolve suspected fraud in a timely manner and extend provisional credit where investigation was prolonged.

110. Bank of America breached its duty owed to Plaintiff by not providing an EDD card with an EMV chip which is considered the debit and credit card security standard around the world.

///

111. Bank of America did not establish a customer service operation capable of handling the needs of its EDD cardholders resulting in Plaintiff being placed on hold for hours repeatedly and requiring plaintiff to call back almost every day. Bank of America failed to investigate suspected fraud on Plaintiff's account resulting in Plaintiff being required to wait months for the account to be unfrozen.

112. Bank of America failed to extend provisional credit to Plaintiff while it investigated suspected fraud.  Plaintiff was forced to wait months with no answer as to when the funds would be returned to Plaintiff.

113. Bank of America's failure to secure and protect EDD cardholders' funds using EMV chip technology is inconsistent with industry standards and its own policies for non-EDD debit and credit card holders.

114. Bank of America's failure to timely investigate and respond as to suspected fraud on Plaintiff's EDD debit cards is inconsistent with Regulation E and industry standards.

115. Bank of America was aware of the security risks posed by magnetic stripe technology.  EDD card information was required to be transferred securely by the contract with California but the procedures Bank of America implemented were insufficient demonstrating that the harm Plaintiff suffered was a reasonably foreseeable result of Bank of America's misconduct.

116. As a direct and proximate result of Bank of America's negligent performance of contract, Plaintiff has been deprived of EDD benefits.

## COUNT VI

### STRICT LIABILITY, DESIGN DEFECT, RISK BENEFIT TEST

117. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

118. Plaintiff alleges that the foregoing acts and omissions by Bank of America constitute a design defect that caused harm to Plaintiff. To establish this claim, Plaintiff must prove the following: (1) that Bank of America distributed the EDD

Complaint

debit cards (2) that Plaintiff was harmed and (3) that the EDD debit card's design was a substantial factor in causing harm to Plaintiff.

119. Once Plaintiff proves these three facts, the burden shifts to Bank of America to prove that the benefits of the EDD debit card's design outweigh the risks of the design. The following factors are to be weighed: (a) the gravity of the potential harm resulting from the use of the EDD debit card with the magnetic stripe only (b) the likelihood that this harm would occur (c) the feasibility of an alternative safer design at the time of manufacture (d) the cost of an alternative design and (e) the disadvantages of an alternative design.

120. Plaintiff can establish that Bank of America distributed to Plaintiff an EDD debit card with only a magnetic stripe on the card, not an EVM chip.

121. Plaintiff was harmed when personal information was exposed and EDD benefits frozen by Bank of America.

122. Plaintiff can establish that the EDD debit card's design was a substantial factor in causing harm to Plaintiff. Bank of America admits that debit cards with EVM chips are significantly more secure than debit cards without EMV chips. Plaintiff can demonstrate that the lack of an EVM chip and the magnetic stripe only design was a substantial factor in causing Plaintiff to have personal information exposed and EDD benefits frozen.

123. Because Plaintiff has established the three required factors, the burden now shifts to Bank of America to show that that the inferior EDD debit card design's benefits outweigh the risk of harm to Plaintiff.

124. The potential cost savings of pennies to Bank of America to distribute a cheaper inferior card to Plaintiff equipped with antiquated technology is almost nothing compared to the thousands of dollars of direct harm it caused Plaintiff.

125. Bank of America's decision to distribute defectively designed EDD debit cards without EVM technology was the direct and proximate cause of Plaintiff's denial of access EDD funds and exposure of personal information.

23

126. As a result of Bank of America disturbing defective EDD debit cards, Plaintiff is entitled to actual damages, consequential damages, incidental damages, and injunctive relief prohibiting Bank of America from distributing EDD debit cards with only magnetic stripes.

127. Additionally, Plaintiff is entitled to punitive damages because Bank of America's decision to distribute EDD debit cards with only magnetic strips was willful, malicious, oppressive, fraudulent and or reckless.

### COUNT VII

### NEGLIGENT FAILURE TO WARN

128. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

129. The foregoing acts and omissions by Bank of America constituted numerous and multiple acts of negligence. The Bank of America terms and the EDD debit cards themselves lack sufficient warning of the potential risks associated with use of the cards.

130. Plaintiff can establish that:

(1) Bank of America distributed the EDD debit card to Plaintiff;

(2) The EDD debit card has a potential risk of fraud and is vulnerable.  It is industry standard to put EVM chips on debit cards, a security measure that Bank of America employs itself on other debit and credit cards;

(3) Plaintiff was forced into a situation that made Plaintiff highly susceptible to risks of substantial harm when the EDD card was used in its intended and foreseeable purpose because it was antiquated technology that was easily susceptible to fraud;

(4) Since Bank of America distributed EDD debit cards with only magnetic stripes, which look very similar to other Bank of America debit cards with EVM chips included in them, Plaintiff would not recognize the potential risk of fraud associated with the use of antiquated debit cards;

Complaint

(5) Bank of America failed to adequately warn Plaintiff of the potential risk of having an EDD debit card with only a magnetic stripe on it;

(6) Because of this failure to warn, Plaintiff suffered financial harm, and the potential future harm of having personal information accessed fraudulently by individuals that did not have authorization;

(7) Bank of America's lack of sufficient warnings were a substantial factor in causing Plaintiff's harm.

131. Bank of America's failure to warn Plaintiff of the potential harm associated with using EDD debit cards without EVM technology was the direct and proximate cause of Plaintiff's inability to access EDD funds and have personal information exposed.

132. As a result of Bank of America's failure to warn Plaintiff of the potential substantial dangers of using Bank of America's EDD debit cards, Plaintiff is entitled to actual damages, consequential damages, incidental damages, and injunctive relief prohibiting Bank of America from distributing EDD debit cards with only magnetic stripes as the security measure.

133. Additionally, Plaintiff is entitled to punitive damages because Bank of America's actions only to have magnetic stripes not EVM technology employed on their EDD debit cards was willful, malicious, oppressive, fraudulent and or reckless.

### COUNT VIII

### BREACH OF CONTRACT

134. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

135. The foregoing acts and omissions by Bank of America constituted a breach of contract with Plaintiff.

136. Plaintiff and Bank of America entered a valid contract whereupon Bank of America would distribute all Plaintiff's EDD benefits to Plaintiff. Bank of America agreed to provide Plaintiff this service while adhering to the Terms and Conditions

Complaint

of the California Employment Development Department Debit Card Account Agreement.

137. Bank of America breached its contractual obligation to Plaintiff when it violated Section 2 of that contract when it failed to make funds available for Plaintiff's use on the day it was instructed by EDD to fund Plaintiff's account.

138. Bank of America breached its contractual obligations to Plaintiff when it again, violated Section 2 of that contract by failing to provide Plaintiff with notice required by law when Bank of America froze Plaintiff's account.

139. Bank of America breached its contractual obligation to Plaintiff when Bank of America violated Section 9 of that contract by failing to adhere to federal law in accordance with Regulation E and its Liability Disclosure in Case of Loss, Theft, or Unauthorized Transactions.

140. Bank of America breached its contractual obligations to Plaintiff when Bank of America violated Section 11 of that contract when it did not provisionally credit Plaintiff's account within 10 business days of suspecting fraud.

141. Plaintiff has substantially performed all Plaintiff's duties under the contract with Bank of America. Plaintiff called all given telephone numbers to contact Bank of America through appropriate channels and has continually adhered to all policies and procedures required by Bank of America to establish Plaintiff as a responsible card holder.

142. Bank of America's actions have directly harmed Plaintiff, and Plaintiff has suffered actual damages in the amount of frozen funds, and foreseeable consequential damages.

## COUNT IX

### BREACH OF IMPLIED CONTRACT

143. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

///

Complaint

144. The foregoing acts and omissions by Bank of America constituted a breach of implied contract with Plaintiff.

145. Contract may be created by the conduct of the parties, without spoken or written words. Conduct will create a contract if the conduct of both parties is intentional and each knows, or has reason to know, that the other party will interpret the conduct as an agreement to enter a contract.

146. Bank of America provided banking services to Plaintiff. In exchange Bank of America benefitted, and continues to benefit, from Plaintiff because it makes money through interest and fees associated with EDD accounts.

147. Bank of America acknowledged these benefits and has intentionally retained them.

148. Plaintiff continually provides Bank of America the ability to make money through interest and fees associated with EDD accounts.

149. By providing Bank of America that ability and Bank of America' acceptance of it, Plaintiff and Bank of America, have entered into an implied contract separate and apart from Bank of America's terms of service.  Bank of America agreed to and was obligated to take reasonable steps to ensure that Bank of America prepaid EDD debit card accounts were secure against unauthorized transactions and any claims regarding unauthorized transactions were adequately investigated and resolved.

150. All parties understood that such protections and customer service obligations were integral and essential to Bank of America's business.

151. Pursuant to the implied contracts, Bank of America was obligated to provide Plaintiff with EDD prepaid debit card services that were suitable for their intended purpose of saving and accessing EDD benefits as needed.  However, Plaintiff received services wherein Bank of America failed to take reasonable steps to safeguard Plaintiff's EDD funds and adequately investigate or resolve the frozen account.

///

///

Complaint

152. Plaintiff fully performed Plaintiff's obligations and fulfilled any relevant conditions under the implied contract, including by, among other things, alerting Bank of America of the frozen account numerous times.

153. Bank of America's failure to fulfill its obligations and take reasonable steps to protect Plaintiff's funds from being frozen and its failure to take reasonable steps to timely and adequately respond resulted in Plaintiff receiving banking services that were of less value than the consideration Plaintiff provided.

154. As a result of Bank of America's conduct, Plaintiff has suffered actual damages in an amount equal to the difference in the value of the banking services Plaintiff paid valuable consideration to receive and the banking services Plaintiff actually received.

## COUNT X

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

155. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

156. The foregoing acts and omissions by Bank of America constituted a breach of implied covenant of good faith and fair dealing with Plaintiff.

157. In every contract or agreement there is an implied promise of good faith and fair dealing. This implied promise means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract. Good faith means honesty of purpose without any intention to mislead or to take unfair advantage of another. Generally speaking, it means being faithful to one's duty or obligation. However, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

158. Plaintiff and Bank of America entered a valid contract as evidenced by the terms and conditions of the EDD account.

///

///

Complaint

159. Bank of America violated the duty to act fairly and in good faith when it unilaterally froze Plaintiff's account for months with no warning or reason sent to Plaintiff.

160. Plaintiff did all, or substantially all the significant things that the contract required Plaintiff to do. Plaintiff complied with the terms and conditions, notified Bank of America of the frozen account and called Bank of America numerous times.

161. All conditions required for Bank of America to perform had occurred, namely, EDD had deposited funds into Plaintiff's account and Plaintiff adhered to all requests. Bank of America's specific act of freezing Plaintiff's account was the direct conduct that prevented Plaintiff from receiving benefits under the contract.

162. It was these specific actions by Bank of America that were not acts of fairness and good faith.

163. Bank America's actions caused a breach of implied covenant of good faith and fair dealing which was the direct and proximate cause of Plaintiff's inability to access EDD funds and have personal information exposed.

### COUNT XI

### BREACH OF CONTRACT, THIRD-PARTY BENEFICIARY

164. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

165. The foregoing acts and omissions by Bank of America constituted a breach of contract pertaining to third-party beneficiaries wherein Plaintiff is the third-party beneficiary.

166. The State of California and Bank of America entered a valid contract where Bank of America agreed to distribute EDD benefits. This distribution was to be made from California to Bank of America to EDD recipients through Bank of America EDD accounts and debit cards.

///

///

Complaint

167. Plaintiff is not a party to the contract. However, Plaintiff is be entitled to damages for breach of the contract since a motivating purpose for entering the contract was for Plaintiff to benefit from the contract.

168. It is without question that California intended Bank of America to distribute EDD benefits to recipients of the benefits. The primary purpose of the contract with Bank of America's was to create a way for Plaintiff to access EDD benefits.

169. Bank of America's duty was to create accounts for EDD beneficiaries and provide them debit cards to access their funds in a secure, safe, and reliable manner.

170. Bank of America breached its contract with EDD when it failed to provide a way for Plaintiff to access EDD benefits in a secure and reliable manner.

171. Bank of America elected to save money and give Plaintiff an EDD debit card without an EVM chip which made it susceptible to fraud.

172. Because Bank of America has not returned, refunded, unfrozen, or allowed Plaintiff to access the EDD benefits, Bank of America has breached its contract with the State of California.

173. Plaintiff was harmed as a third-party beneficiary by Bank of America's breach of contract with the State of California. Bank of America's breach of contract was the direct and proximate cause of Plaintiff's inability to access EDD funds and have personal information exposed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgement be entered against Defendant for:

A.     Declaratory and injunctive relief prohibiting Bank of America from engaging in the misconduct described herein, including but not limited to ordering that Bank of America take each of the following corrective actions:

- Return to Plaintiff all money that was taken from Plaintiff's Bank of America's EDD account;

- Replace Plaintiff's EDD debit card with an EDD debit card that contains a

Complaint

EVM chip;

- Establish a customer service website, email address, and telephone number that allows EDD card holders to request reimbursement in a reasonably easy and hassle-free manner;

- Respond to EDD card holders' requests for reimbursement within a reasonable time; and

B.    An award of all recoverable compensatory, statutory, and other damages sustained by Plaintiff, including disgorgement, unjust enrichment, restitution, and all other available relief under applicable law, including but not limited to accrued interest for the periods during which Plaintiff was deprived of funds in Plaintiff's EDD account due to unauthorized transactions;

C.    An award of punitive damages pursuant to applicable law;

D.    Reasonable attorneys' fees and expenses as permitted by California Code of Civil Procedure § 1021.5, 15 U.S.C. § 1693m(a)(3) and any other applicable statute or law;

E.    Taxable costs;

G.    Pre- and post-judgment interest as allowed by law and;

H.    Any other relief the Court deems just.

## TRIAL BY JURY

174. Pursuant to the seventh amendment of the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Respectfully submitted,

**SWIGART LAW GROUP**

Date:  April 15, 2021    By:  */s/ Joshua B. Swigart*

Joshua B. Swigart, Esq.
Josh@SwigartLawGroup.com

Attorney for Plaintiff

Complaint